261 N.J. Super. 292 (1993)
618 A.2d 894
IN THE MATTER OF THE PRODUCER ASSIGNMENT PROGRAM ESTABLISHED PURSUANT TO N.J.S.A. 17:33B-9C, AND AMENDING ORDER NO. A91-281. IN THE MATTER OF THE PRODUCER ASSIGNMENT PROGRAM ESTABLISHED PURSUANT TO N.J.S.A. 17:33B-9C, AND AMENDING ORDER NO. A91-281. IN THE MATTER OF AMENDED ORDER A-92-226 OF THE COMMISSIONER OF INSURANCE REGARDING MANDATORY PRODUCER ASSIGNMENT PROGRAM UNDER FAIRA. IN THE MATTER OF THE COMMISSIONER OF INSURANCE ORDER NOS. A-92-288 AND A-92-255, REGARDING THE PRODUCER ASSIGNMENT PLAN. IN THE MATTER OF THE ASSIGNMENT OF PRODUCERS TO THE TRAVELERS GROUP PURSUANT TO THE PRODUCER ASSIGNMENT PROGRAM. IN THE MATTER OF THE COMMISSIONER OF INSURANCE ORDER NO. A92-288 REGARDING THE PRODUCER ASSIGNMENT PLAN. IN THE MATTER OF THE COMMISSIONER OF INSURANCE'S JULY 2, 1992 ORDER REGARDING THE PRODUCER ASSIGNMENT PROGRAM ESTABLISHED PURSUANT TO N.J.S.A. 17:33B-9C, AND AMENDING ORDER NO. A91-281.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1992.
Decided January 8, 1993.
*295 Before Judges PRESSLER, MUIR, Jr. and KESTIN.
Elmer M. Matthews argued the cause for appellant The Travelers Group (Clapp & Eisenberg, attorneys; Frederic S. Kessler and Harvey C. Kaish, on the brief).
Wesley S. Caldwell, III argued the cause for appellants United Services Automobile Association and USAA Casualty Insurance Company (LeBoeuf, Lamb, Leiby & MacRae, attorneys; William F. Megna, Richard J. Wolf, Robert J. Bhend, Mark L. Mucci, Francis V. Cook, on the brief).
Susan Stryker argued the cause for appellant Aetna Casualty and Surety Company (Hannoch Weisman, attorneys).
Deborah T. Poritz argued the cause on behalf of amicus curiae State Farm Mutual Insurance Automobile Insurance Company and State Farm Indemnity Company (Jamieson, Moore, Peskin & Spicer, attorneys; Ms. Poritz, Thomas P. Weidner, Ross A. Lewin and Julie R. Tattoni, on the brief).
Smith, Stratton, Wise, Heher & Brennan, attorneys for appellant Allstate Insurance Company (John Havas admitted pro hac vice for Foulkrod, Reynolds & Havas; John Havas, Larry L. Miller and Penny A. Bennett, on the brief).[*]
*296 Bernard M. Flynn, Deputy Attorney General, argued the cause for respondent New Jersey Department of Insurance (Edward J. Dauber, Acting Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Mr. Flynn, Thomas M. Hunt, Adam Scaramella and Katherine G. Motley, Deputy Attorneys General, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is yet another chapter in the ongoing saga of the automobile insurance industry's continuing challenge to the Fair Automobile Insurance Reform Act of 1990, N.J.S.A. 17:33B-1 to -63 (FAIRA), and the manner in which the Commissioner of Insurance has chosen to implement and enforce that Act. At issue here are the actions taken by the Commissioner to effectuate the producer assignment program mandated by N.J.S.A. 17:33B-9c.
The automobile insurance industry morass which was the motivating impetus for the enactment of FAIRA, the problems it was intended to resolve, and the general mechanisms of its redress are matters which, in the two years since the Act's passage, have received extensive judicial exposition in a variety of contexts, and need not be repeated here. See, e.g., Matter of Plan For Orderly Withdrawal, 129 N.J. 389, 609 A.2d 1248 (1992); State Farm v. State, 124 N.J. 32, 590 A.2d 191 (1991); Matter of Com'r of Insurance, 256 N.J. Super. 158, 606 A.2d 851 (App.Div. 1992); Matter of Private Pass. Auto Rate Rev., 256 N.J. Super. 46, 606 A.2d 401 (App.Div. 1992); Matter of Market Transition Facility, 252 N.J. Super. 260, 599 A.2d 906 (App.Div. 1991); Matter of Aetna Cas. and Sur. Co., 248 N.J. Super. 367, 591 A.2d 631 (App.Div. 1991); Allstate Ins. Co. v. Fortunato, 248 N.J. Super. 153, 590 A.2d 690 (App.Div. 1991). And see generally Assembly Appropriations Committee Statement to A-1 (1990) (FAIRA). For purposes of the issues raised by this appeal it suffices to say that the overall purpose of FAIRA is to ensure that all automobile owners in the state, except those who meet statutorily defined objective criteria of poor risk, see N.J.S.A. 17:33B-13, are covered by the so-called *297 voluntary market. To this end, FAIRA abolished the prior JUA system established by the New Jersey Full Insurance Availability Act, N.J.S.A. 17:30E-1 to -24; created the Market Transition Facility (MTF) as an interim mechanism to achieve a two-year, quota-prescribed, phased depopulation of JUA and the transfer of JUA insureds to the voluntary market, N.J.S.A. 17:33B-11; established the rule of "take all comers," required insurers to accept applications for automobile insurance submitted by all eligible persons, that is, those not falling within a statutorily defined poor-risk category, N.J.S.A. 17:33B-15[1]; and revived the pre-JUA system of an assigned risk plan to provide coverage for ineligible persons, N.J.S.A. 17:33B-22.
In order to insure that all eligible persons have access to the voluntary market, FAIRA mandates a producer assignment program, N.J.S.A. 17:33B-9. This program has its genesis in the producer system created by the JUA act, N.J.S.A. 17:30E-10. In sum, 17:30E-10a had required JUA business to be serviced by producers, that is, licensed insurance brokers and agents, selected by the JUA board. The board had been required to include an affirmative action program in its selection procedures, a mandate evidently intended to serve not only the producer population but, primarily, the otherwise underserved consumer population. Paragraph b of 17:30E-10 had empowered the board, in the case of producers who were neither exclusive representatives of a servicing carrier nor had entered into a contractual relationship with a servicing carrier, to assign producers to "all servicing carriers on an equitable basis...." The producers had been compensated by JUA in accordance with a statutorily prescribed commission rate. N.J.S.A. 17:30E-11. The effectuation of the JUA producer plan resulted in the creation of a category of insurance brokers who wrote only JUA business, developed substantial books of JUA *298 business, and established ongoing fiduciary relationships with their JUA customers to whom the voluntary market was, for a variety of reasons, inaccessible.
It is against this background that we consider FAIRA's producer assignment program. Paragraph a of N.J.S.A. 17:33B-9 merely requires the Commissioner to compile a list of JUA producer-brokers and to make the list available to all automobile insurers licensed to do business in New Jersey. The import of paragraph b is also precatory, simply requiring the Commissioner to "initiate a plan to encourage the broadening of authorities held by those brokers who have been active as association [JUA] producers." The heart of the legislation is paragraph c, which requires the Commissioner to establish a producer assignment program by October 1, 1991, that is, one full year prior to the final depopulation of the MTF and the mandated assumption by the voluntary market of the obligation to insure all eligible persons. Paragraph c requires that the program "shall provide for the assignment of qualified producers on an equitable basis to insurers writing private passenger automobile insurance in the voluntary market." Finally, paragraph c enumerates five criteria for producer eligibility for the program. A producer (1) must have been a JUA producer, (2) must have no present affiliation with a voluntary carrier permitting the placing of automobile insurance, (3) must have had such an affiliation which had been terminated on or after December 31, 1980, (4) must have demonstrated to the Commissioner "competency, efficiency and effectiveness in servicing association and other insurance business," and (5) must be located in and service a geographic area determined by the Commissioner "to lack sufficient representation for the placement of automobile insurance business in the voluntary market."
In light of the history of automobile insurance in this state in the last decade and the legislative purpose and plan sought to be effected by FAIRA, this much at least is clear. The enactment of N.J.S.A. 17:33B-9 constitutes a legislative recognition *299 that the orderly and comprehensive implementation of the "take all comers" centerpiece of the FAIRA scheme requires that there be an effective conduit between the voluntary market and those insureds to whom the voluntary market was theretofore inaccessible for an obvious panoply of demographic reasons. The enactment of N.J.S.A. 17:33B-9 further recognizes that the unaffiliated JUA producers constitute just such a conduit whose utilization is reasonably calculated to advance the legislative voluntary-market plan.
As we understand the posture of this appeal, the complaining insurers are not challenging the validity of N.J.S.A. 17:33B-9 itself. Rather they object to the actions taken by the Commissioner, both procedurally and substantively, to implement it.
We consider first the procedural challenges whose description also explains the procedural history of this appeal. Pursuant to the statutory directive, the Commissioner issued two orders on July 2, 1991, Order A91-280, which established a voluntary producer placement plan in implementation of paragraph b of N.J.S.A. 17:33B-9, and Order A91-281, which established a mandatory producer assignment program in implementation of paragraph c. On August 5, 1991, both of these orders were proposed as rules, published respectively at 23 N.J.R. 2275 and 23 N.J.R. 2297, proposed to be adopted, respectively, as N.J.A.C. 11:3-41 and -42. The summary section preceding proposed N.J.A.C. 11:3-42, the mandatory assignment program, explains that:
These proposed new rules thus codify a regulatory framework by which the Commissioner may assign Association producers in accordance with N.J.S.A. 17:33B-9c and thus reduce market disruptions associated with the termination of eligible Association producers and the severing of established relationships between eligible Association producers and insureds.
For reasons which do not fully appear in the record, the rule was not adopted following the public comment period. It seems fair to conclude, however, that this was at least partly attributable to the ongoing evolution of an equitable exemption plan whereby producer assignments would not be made to any insurer demonstrating to the Commissioner its voluntary assumption *300 of a fair share of the new and expanded voluntary market, and particularly, the market in those geographical areas determined by the Commissioner to be underserviced by traditional voluntary arrangements and experience.[2]
By June of 1992, it evidently became clear to the Commissioner that proposed revisions in the program as initially proposed were of a magnitude requiring re-promulgation of the rules. Accordingly, in July 1992 he issued an amendatory order, A92-226, revising the mandatory producer assignment program as delineated in his earlier actions. In August 1992 an amended proposed rule consistent with the order was published at 24 N.J.R. 2812. Both the amended order and the revised regulation contained expanded exemption provisions.
The delays in effecting a fair and comprehensive producer assignment program precluded a timely effective date for the proposed rule, that is, promulgation by October 1, 1992, the MTF's expiration date. Consequently, on September 2, 1992, the Commissioner, pursuant to N.J.S.A. 52:14B-4(c), issued a Statement of Imminent Peril in support of his promulgation of an emergency producer assignment program rule, and on the same day, the Governor issued a concurring Certification of *301 Imminent Peril. The emergency rule became effective on September 4, 1992 for the maximum sixty-day period permitted by statute. Concurrently with the promulgation of the emergency rule, the Commissioner proposed its readoption in compliance with regular adoption requirements prescribed by N.J.S.A. 52:14B-4. See N.J.A.C. 1:30-4.5(d). Thus, while the emergency rule expired on November 3, 1992, it was timely replaced by the regularly adopted rule, N.J.A.C. 11:3-42, which became effective on November 2, 1992. There was consequently no regulatory hiatus.
Prior to the adoption of the emergency rule and under the authority of the amended order, the Commissioner had issued a series of separate orders making producer assignments to the insurers. A number of insurers applied for and were denied exemption from the producer assignment program. These insurers included Allstate Insurance Company, The Travelers Group, United Services Automobile Association (USAA), Tokio Marine and Fire Insurance Company, Ltd., and Aetna Casualty and Surety Company. Each filed a notice of appeal challenging the validity of the program, the specific assignment orders entered against them and the exemption denials. At the time each notice of appeal was originally filed, the relevant action of the Commissioner establishing the program was his order. Shortly thereafter, the emergency regulation was promulgated, and the notices were amended to challenge that regulation as well. We now deem the notices further amended to challenge the regularly promulgated N.J.A.C. 11:3-42. We further note that, but for the exemption provisions, which are not in issue here, the three documents are substantially the same.
The final stage of procedural history which is here relevant is this. The initiation of the separate appeals of these insurers was accompanied by their individual applications for various emergent relief including a stay of the Commissioner's orders making specific producer assignments to each of them under the program promulgated by the amended order. We denied the stay application, and in order to expedite our consideration *302 of the challenges made to the validity of the Commissioner's producer assignment program, we also entered orders consolidating all of the appeals; bifurcating the challenges to validity from all other challenges, including individual exemption denials; and accelerating the "validity appeal."[3] We also entered an order permitting the participation in this stage of the appeal by State Farm Mutual Automobile Insurance Company as amicus curiae. State Farm had not appealed since it had been exempted from the Program by reason of its having met its assigned quota. We have left, therefore, for another day the complaints by the appellant insurers respecting their respective exemption denials. We consider now only the challenges to the validity of the program itself.
By way of procedural challenge, the insurers claim that the producer assignment program pursuant to which the specific producer assignment orders were issued to them is invalid since it was established by order rather than by an exercise of the rule-making power. We agree that the establishment of the program meets the criteria for rule-making as the exclusive promulgative technique. See, e.g., Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 328-329, 478 A.2d 742 (1984). Nevertheless, we are also satisfied that that defect was cured by the adoption of the emergency regulation, which, in effect, confirmed the order. We reject the insurers' contention that the insurance crisis was not remediable by an emergency regulation adopted pursuant to N.J.S.A. 52:14B-4(c) because the emergency was self-created by the Commissioner. The insurers claim that the imminent expiration of the MTF without a mechanism in place to assure the immediate availability of voluntary coverage for its residual insureds was due only to the inaction of the Commissioner. First, that is not an entirely fair characterization. The record is clear that the *303 Commissioner had been making extensive efforts to promulgate a plan that would be fair and reasonable in terms of all the competing interests involved. Beyond that, we are satisfied that the insurers take too narrow a view of the scope of a remediable emergency. As the Supreme Court made clear in Worthington v. Fauver, 88 N.J. 183, 195, 440 A.2d 1128 (1982), a crisis warranting resolution by emergency regulation is no less remediable by that mechanism because it resulted from an administrative "failure to take action. Thus, it is not a necessary component of an `emergency' that it be sudden or unforeseen." We conclude, therefore, that the emergency regulation technique was appropriately resorted to here, and that, in any case, the insurers' challenge is effectively rendered moot by the adoption of N.J.A.C. 11:3-42 in due course prior to the expiration of the emergency regulation.
We turn now to the insurers' substantive challenges to the producer assignment program regulation. We consider those challenges in the light of the well-settled principles governing judicial review of administrative rule-making. First, rules promulgated by administrative agencies are attended by a presumption of validity if they come within the ambit of delegated authority. A heavy burden is thus imposed on their challengers to prove that they are arbitrary, unreasonable or fail to comport with the legislative will. See, e.g., In re Adoption of N.J.A.C. 7:26B, 128 N.J. 442, 449, 608 A.2d 288 (1992); Medical Soc. v. Dept. of Law & Public Safety, 120 N.J. 18, 25, 575 A.2d 1348 (1990); Cole Nat. Corp. v. State Bd. of Examiners, 57 N.J. 227, 231, 271 A.2d 421 (1970). Moreover, industries which are strongly affected with the public interest, including the insurance industry, are subject to comprehensive regulation in the protection of that interest. State Farm v. State, 124 N.J. 32, 45-47, 590 A.2d 191 (1991); Sheeran v. Nationwide Mut. Insurance Company, Inc., 80 N.J. 548, 559, 404 A.2d 625 (1979); Matter of Aetna Cas. and Sur. Co., supra, 248 N.J. Super. at 376, 591 A.2d 631. Applying these principles to the objections raised by the insurers, we conclude *304 that the regulation meets the test of valid, reasonable, statutorily authorized administrative action.
The main thrust of the insurers' attack focuses on N.J.A.C. 11:3-42.12, which requires them to enter into contractual relationships with the producers assigned to them. Assuming that the import of that provision requires them to enter into some form of agency contract with the producers, the insurers marshall a host of arguments predicated on constitutional precepts, statutory mandates, and case-law principles for the purpose of demonstrating that the Commissioner does not have the authority to dictate to them who their agents will be, who may represent and speak for them and who may bind them to coverage.
It is true that N.J.A.C. 11:3-42.12 is construable as requiring agency relationships between the insurers and the producers. But that provision is not without ambiguity. At oral argument, the Commissioner led us to believe that he construed its relational requirements to be fully met by a traditional broker arrangement in which the producer has no authority to bind the company but rather merely takes the application for insurance and submits it to the insurer for its approval, receiving a commensurate commission for the insurance business he has thus placed.
Following oral argument, the Commissioner, by supplemental letter submission, modified his view of the insurer-producer relationship. In this clarification, he confirms that the producers will have no authority to bind the insurer. We regard the power to bind as a critical distinction between broker and agency status. Consequently, to this extent the producers will function as traditional brokers, not as agents of the insurers to which they have been assigned. The Commissioner, however, further suggests that the producer status intended by the regulation is actually a form of sui generis hybrid. That is, he regards it as necessary for the achievement of the program's purposes that the producers be nominally *305 designated agents rather than brokers. The reason for this, he says, is to permit the imputation of responsibility to the insurer "for an assigned producer's conduct, within the scope of his authorized duties...." The Commissioner goes on to explain, however, that the insurer may require, as an acceptable term of the producer contract, that the producer himself carry errors and omissions insurance. We also note, as further discussed hereafter, that the mandated producer relationship is terminable by the insurer for cause and is in any event limited to a two-year period. N.J.A.C. 11:3-42.17.
Considering the import of the supplemental submission, we are persuaded that this hybrid form of insurer representative, since it lacks the element of binding authority, since it is of limited duration, and since it may be predicated on an enforceable scheme of indemnification of the insurer for other imputable acts of the representative, does not clearly implicate the basic constitutional and statutory considerations underlying the insurers' fundamental challenge. In any case, we are persuaded that the constraints imposed upon the insurers' self-determination by having to contract with the producers in the manner required by the rule as now construed by the Commissioner do not reach the magnitude of an unconstitutional taking as defined by State Farm, supra, 124 N.J. at 45-51, 590 A.2d 191.
In short, since the insurers are in any event bound by the "take all comers" requirement of FAIRA, they are necessarily required to accept the applications of all eligible persons. Consequently, this clarified status of the producers imposes little more onus on the insurers than the "take all comers" provision itself. The broker characteristics of the producers' status, coupled with the "take all comers" provision, assures the statutory purpose of providing a conduit between the underserved insurance-consumer population and the insurers. Moreover, an insurer has the power to protect itself from acts of negligence committed by the producer for which it would be liable as a result of the agency characteristic of the hybrid status both by requiring a policy of indemnity and by the termination for cause *306 provision of N.J.A.C. 11:3-42.17. Finally, if not sooner terminated for good cause the producer relationship is of limited duration. All that being so, we are satisfied, in the context of our scope and standard of review and in the light of the statute and the legislative purpose sought to be accomplished thereby, that the Commissioner's actions are in conformance with his statutory authority. See, e.g., Cedar Cove, Inc. v. Stanzione, 122 N.J. 202, 212, 584 A.2d 784 (1991). It remains, however, regrettable that so much litigative effort has been attributable to a truly astonishing lack of prior communication between the Commissioner and the insurers.
There remain, nevertheless, several additional attacks made by one or more insurers which require address. The insurers object to the provision of the regulation permitting the assigned producers to place new business with their respective assigned insurers rather than merely turning over, in effect, their books of business subject to closure on October 1, 1992. We first reject the contention that this provision is violative of FAIRA, and specifically, N.J.S.A. 17:33B-11(e). That section of the Act obviously applies only to MTF business and not post-MTF voluntary market business. We are also satisfied that the new-business stipulation is a reasonable, if not essential, means of implementing the broad-based and inclusive voluntary market envisioned by FAIRA.
Obviously, as to geographic areas which have been historically underserved, it is not reasonable to assume that dramatic changes will occur overnight and that the insurance-requiring public will suddenly find its way into a voluntary market with which it has had no recent experience and which has no immediate neighborhood presence. The need for a transition period with a producer conduit is not an arbitrary assumption for the Commissioner to have made. And it is only a two-year transition period for which N.J.A.C. 11:3-42.17 provides. At the end of that period, an insurer not wishing either to continue that relationship or to enter into a traditional form of agency relationship *307 with the assigned producer is at liberty to "[b]uy out the producer by paying to him or her an amount equivalent to at least one year's commission based on the book of business at the end of the two year assignment period." We are persuaded that a limited two-year relationship poses an insufficient intrusion into the insurers' business affairs to implicate the court's remedial attention. Moreover, there is consideration for the buy-out provision since the payment is based on the business placed by the producer of which, it is fair to assume, the insurer will, to a substantial extent, have the continuing benefit.
The remaining objections are subject to ready disposition. The Commissioner has made clear that the producer contracts entered into pursuant to the regulation will be limited to automobile insurance, thus eliminating the ambiguity created by the provision of N.J.A.C. 11:3-42.12(a) incorporating N.J.S.A. 17:22A-15, which requires agency contracts to include all lines of insurance. We also reject the insurers' argument that the producer arrangement may result in some producers placing insurance for ineligibles, either inadvertently or not. The short answer to this concern is that any such error is remediable by the insurer obtaining assigned-risk credit for any such erroneously issued policies. Moreover, a producer who intentionally submits applications by ineligibles may well be subject to termination for cause under N.J.A.C. 11:3-42.17.
Some of the insurers also claim that the Commissioner's assignment orders violate the statutory direction for assignment on an equitable basis. We are satisfied that none of the insurers has demonstrated that this is so. Obviously an "equitable basis" is not congruent with mathematical exactness. As we said in Matter of Aetna, supra, 248 N.J. Super. at 380, 591 A.2d 631, in construing the cognate provision of N.J.S.A. 17:30E-10(b), "equity among insurers is not the only equity that legitimately concerned the Legislature and the Commissioner." The needs of the traditionally unserved and underserved public must be factored into the equation. The *308 method for determining apportionment is provided by N.J.A.C. 11:3-42.9 and 42.10(a). The insurers have not carried their burden of demonstrating that the Commissioner's apportionment failed to meet the statutory intendment of "equitable."
Finally, the insurers argue that the Commissioner has unreasonably and too broadly delineated the underserved geographic territories which constitute the fundamental basis of the mandatory producer assignment program. The short answer to this contention is that the insurers had an opportunity during the final rule-making process to make their views on this issue known, and all these appellants forewent that opportunity. Once again, they have failed to demonstrate that the Commissioner's delineation is unreasonable.
One remaining matter must be addressed. At oral argument, the Commissioner made clear that he does not intend to and will not pre-review or pre-approve producer contracts entered into under the program. If a producer is offered a contract asserted to violate the letter or spirit of the regulation, it is the producer who must seek relief from the Commissioner. We anticipate that any future interpretive conflicts among the Commissioner, the insurers and the producers will be resolved in this manner. We are obviously not dealing at this juncture with the regulation as applied beyond our specific holdings herein and we do not foreclose future disputes arising out of interpretive disagreements here unaddressed.
The general validity of the Commissioner's orders here appealed from and of N.J.A.C. 11:3-42.1 to -20 are sustained to the extent consistent with the opinion. The Clerk shall issue a scheduling order with respect to all remaining issues raised by the notices of appeal.
NOTES
[*] Allstate withdrew its appeal on the eve of oral argument, advising the court that it and the Commissioner of Insurance had settled all of their outstanding controversies including the controversy involved in this appeal.
[1] N.J.S.A. 17:33B-15a provides that "every insurer, either by one or more separate rating plans filed in accordance with... [N.J.S.A. 17:29A-45] ... shall provide automobile insurance coverage for eligible persons." N.J.S.A. 17:33B-15b provides that "No insurer shall refuse to insure, refuse to renew, or limit coverage available for automobile insurance to an eligible person who meets its underwriting rules as filed with and approved by the commissioner...."
[2] That this is so appears from a certification submitted to this court on earlier motion to us by Jean Bickal, Director of the Automobile Residual Market Unit of the Department of Insurance, in which she explains that:

The Commissioner determined that the exemption provision contained in the initial PAP [producer assignment program] should be broadened, allowing every insurer to apply for an exemption by demonstrating that it provides sufficient access to the public in inadequately serviced geographic areas. The re-proposed regulation delineates specific information that must be submitted to support an insurer's exemption request. Since a test for determining whether or not an insurer achieves sufficient market penetration in inadequately serviced territories was difficult to formulate in the absence of specific facts with respect to each insurer, the Commissioner proposed that the test not be developed until and upon the submission of these facts.
This statement confirms the summary section preceding the August 1992 proposed rule, which explained that it made "substantive changes to the Program regarding the criteria for determining eligibility for producer assignments, the criteria by which an insurer may demonstrate that its marketing system provides sufficient access to the market and thereby receive an exemption from mandatory producer assignments...."
[3] Since Tokio Marine challenged only its exemption denial, it did not participate in this phase of the appeal.