734 A.2d 795 (1999)
324 N.J. Super. 109
Kevin WALKER, Petitioner-Appellant,
v.
DEPARTMENT OF CORRECTIONS, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted June 2, 1999.
Decided June 15, 1999.
Kevin Walker, petitioner-appellant pro se.
Paul H. Zoubek, Acting Attorney General, for respondent-respondent (Joseph L. Yannotti, Assistant Attorney General, of counsel; Jayroe Wurst, Deputy Attorney General, on the brief).
Before Judges PRESSLER and STEINBERG.
PER CURIAM.
This is a prisoner appeal from that portion of the penalty imposed upon the adjudication of a disciplinary infraction that terminates contact visits with leave to apply for their restoration after one year. We affirm.
Appellant Kevin Walker, then an inmate at Riverfront State Prison, was charged with a violation of N.J.A.C. 10A:4-4.1(a)*.203 based on his possession of marijuana in his cell. A hearing on the charge was held on June 10, 1998. Appellant was represented by an inmate paralegal as counsel substitute. Although a written statement was submitted by appellant's cellmate respecting the search, the cellmate did not indicate that he had any knowledge of the marijuana. The hearing officer, relying on the statement and the report of the corrections officers who found the marijuana and had it tested, found appellant guilty of the charge. A *796 sanction was imposed of 15 days in detention, 120 days in administrative segregation, 90 days of random urine testing, 90 days of good time, and loss of contact visits. The loss of contact visits was based on the Department of Corrections' (DOC) Zero Tolerance Drug/Alcohol Policy, which it announced in April 1998, that is, prior to the commission of the infraction here. That policy included the stipulation that if an inmate were adjudicated guilty of possession of a controlled dangerous substance, contact visits would be suspended whether or not a contact visit had anything to do with the violation.
On appellant's appeal to the Prison Superintendent, the guilt adjudication was upheld as was the penalty except for two modifications: first, the 120 days in administration segregation was reduced to 60 days and second, the express stipulation was added that appellant could request restoration of contact visits after 365 days. That disposition was signed by the Superintendent on June 16, 1998.
The gravamen of this appeal is that the contact-visit loss component of the Zero Tolerance Drug/Alcohol Policy is unenforceable because of its contradiction of the administrative rule in effect at the time of the infraction. In sum, prior to amendment of N.J.A.C. 10A:4-5.1, effective November 2, 1998, paragraph (c)6 thereof had provided, in relevant part, that "[l]oss of visit privileges shall be imposed only for visit-related disciplinary infractions." The November 1998 amendment redesignated paragraph (c) as paragraph (d), deleting the quoted language from subsection 6. A new paragraph (c) was then adopted implementing the previously announced Zero Tolerance Drug/Alcohol Policy and providing in relevant part that adjudication of an inmate's guilt of possession of a controlled dangerous substance "shall result in termination of contact visit privileges." Appellant's argument is that until formal amendment of the regulation, he was entitled to the benefit of the existing regulation. Thus, since his infraction was not alleged to have been related to a contact visit, the DOC was without authority to contravene its own regulation by terminating contact visits.
We reject this argument. We note first that the purpose of termination of contact visits for those adjudicated guilty of serious violation of the Zero Tolerance Drug/Alcohol Policy was explained by the DOC in its statement of social impact accompanying the proposal for rule amendment, published in August 1998. That statement provides in part as follows:
The New Jersey Department of Corrections intends to maintain a Zero Tolerance Policy for drug/alcohol possession/sale/use in order to help ensure a drug/alcohol free correctional facility environment. To achieve this goal, inmates found guilty of drug/alcohol-related prohibited acts shall be subject to the termination of contact visit privileges. Non-contact visits shall continue to be permitted in accordance with site-specific correctional facility internal management procedures. For those inmates who have violated the Zero Tolerance Drug/Alcohol Policy, the authorized visit privileges will change, however, non-contact visits will continue to be permitted in accordance with internal management procedures to help ensure the maintenance of ties with family and friends.
The Department of Corrections is aware that whenever a privilege is terminated there will be opposition, particularly by those affected. However, the intent of the Department is to allow the application of disciplinary procedures that encourage voluntary acceptance of certain behavior limitations. These limitations promote positive, rehabilitative behavior and help to ensure the safe, secure and orderly operation of correctional facilities.
Contact visits are commonly known to be the conduit for introducing contraband into correctional facilities. The strong correlation between contact visits and the introduction of drugs, intoxicants *797 and narcotic paraphernalia is the basis for imposing disciplinary action terminating contact visits. Pursuant to Block v. Rutherford, 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984), as long as visit restrictions imposed relate to the legitimate interests of the Department of Corrections in preventing unauthorized use of drugs and alcohol by prisoners, the Department is at liberty to ban certain types of visits. Hence, Departmental administrative staff have carefully considered the benefits expected to result from the Zero Tolerance Drug/Alcohol Policy and believe the implementation of the policy is in the best interests of inmates, correctional facility staff, volunteers and visitors, and the community into which the inmate may ultimately be released.
We have no doubt, in view of this explanation, that both the promulgation of the Zero Tolerance Drug/Alcohol Policy and its implementation by the termination of contact visits for those adjudicated guilty of violating it were well within the DOC'S authority accorded by N.J.S.A. 30:1B-6. To be sure, an administrative agency is required to adopt rules pursuant to the Administrative is Procedure Act, N.J.S.A. 52:14B-1 to -24, in order to effect broad policy mandates. See, e.g., Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 478 A.2d 742 (1984). But the DOC obviously appreciates that obligation since the Zero Tolerance Drug/Alcohol Policy was adopted by regulation. The question then is only as to the time period between the institution-by-institution announcement of the Policy and the formal promulgation of the implementing rules.
In this regard, we note first that the termination of contact visits even where the visit was not involved in the infraction is not a direct contradiction of the preamended regulation. The original regulation referred only to visits generally, not distinguishing between contact and noncontact visits. Non-contact visits are unaffected by the Policy. Consequently, the contact-visit termination of the Policy may be regarded as a clarification or qualification rather than as a direct contravention. Even if this were not so, we are satisfied that the DOC may, in the interests of maintaining order and security, act contrary to rule. See, e.g., Jenkins v. Fauver, 108 N.J. 239, 528 A.2d 563 (1987). Indeed, and in apparent recognition of the special needs of running a correctional system, the Commissioner is expressly authorized by N.J.A.C. 10A:1-2.4(c) to exempt a correctional institution from strict compliance with a rule in order to respect security risks. N.J.A.C. 10A:1-2.5(a) generally permits such exemptions to continue for a two-year period. Here, the DOC acted much more quickly and within a matter of only a few months to effectuate the Policy by formal rule amendment. Finally, we have held that a procedural defect of this nature in the adoption of a policy change or clarification is cured by the proper adoption of a formal rule thereafter. See Matter of Producer Assignment Program, 261 N.J.Super. 292, 302-303, 618 A.2d 894 (App.Div.), certif. denied, 133 N.J. 438-439, 627 A.2d 1144 (1993). For these reasons, we conclude that there was no procedural impediment to the implementation of the Policy upon its formal announcement and during the period until its adoption by rule.
We also reject appellant's claim that contact-visit termination violated his liberty interests secured by the state and federal constitutions. As made clear by the United States Supreme Court in Block v. Rutherford, 468 U.S. 576, 586-587, 104 S.Ct. 3227, 3232-3233, 82 L.Ed.2d 438, 447-448 (1984), upon which the DOC relied in formulating that aspect of the policy, the denial of contact visits is constitutionally non-offensive if reasonably related to legitimate governmental objectives. We are persuaded that the Policy constitutes just such an objective. We are also satisfied that appellant was accorded the full extent of the due process to which he was *798 entitled. See McDonald v. Pinchak, 139 N.J. 188, 652 A.2d 700 (1995); Avant v. Clifford, 67 N.J. 496, 341 A.2d 629 (1975).
The administrative action appealed from is affirmed.