248 N.J. Super. 153 (1991)
590 A.2d 690
ALLSTATE INSURANCE COMPANY, AN ILLINOIS CORPORATION, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
SAMUEL F. FORTUNATO, IN HIS OFFICIAL CAPACITY OF COMMISSIONER OF INSURANCE OF THE STATE OF NEW JERSEY, AND THE DEPARTMENT OF INSURANCE OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS, CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1991.
Decided May 14, 1991.
*155 Before Judges LONG, R.S. COHEN and STERN.
Patricia A. Kern, Deputy Attorney General, argued the cause for appellants in Aetna A-2850-90T5, respondents in Aetna A-2781-90T5 (Robert J. Del Tufo, Attorney General, attorney; Michael R. Clancy and Jack M. Sabatino, Assistant Attorneys General, of counsel, Patricia A. Kern and Marilyn S. Silvia, Deputy Attorneys General, on the brief).
Marilyn S. Silvia, Deputy Attorney General, argued the cause for appellants/cross-respondents in Allstate A-2927-90T5 (Douglas S. Eakeley, Acting Attorney General, attorney; Jack M. Sabatino, Assistant Attorney General, of counsel, Joseph L. Yannotti and Marilyn S. Silvia, Deputy Attorneys General, on the brief).
Susan Stryker argued the cause for respondents Aetna in A-2850-90T5 and appellants Aetna in A-2781-90T5 (Hannoch Weisman, attorneys, Susan Stryker, on the brief).
Duane C. Quaini, pro hac vice, argued the cause for respondent/cross-appellant Allstate (Smith, Stratton, Wise, Heher & Brennan, attorneys, William J. Brennan, III and Suzanne M. McSorley of counsel, Suzanne M. McSorley and Penny A. *156 Bennett on the brief; Sonnenschein Nath & Rosenthal, attorneys).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
Allstate Insurance Company and Aetna Casualty and Surety Company ("the insurers")[1] filed separate Chancery Division suits against Samuel E. Fortunato, Commissioner of Insurance. They sought declaratory and injunctive relief relating to their pending filings for approval of proposed increases in automobile insurance premium rates. The insurers both sought judgment declaring that the Commissioner's failure to act on the filings resulted in approvals by operation of law. Failing that, they sought orders requiring that their filings be deemed complete, and that they be transmitted to the Office of Administrative Law for contested-case hearings.
The Chancery Division entered judgment in each case refusing to declare the filings automatically approved but ordering transmittal of the filings to the OAL. The Commissioner appealed the orders for transmittal to the OAL. The insurers cross-appealed the portion of the judgments declaring that the filings were not automatically approved.[2] We consolidated the appeals and accelerated them. We now affirm on both appeals and cross-appeals.
On March 12, 1990, Chapter 8 of the Laws of 1990 was approved by the Governor and immediately took effect. Called the Fair Automobile Insurance Reform Act of 1990 ("FAIR Act"), it undertook a significant overhaul of the perennially troubled New Jersey auto insurance market. Among other *157 things, the FAIR Act creates a three-year surtax of an annual 5% on all taxable premiums on voluntary automobile insurance policies, N.J.S.A. 17:33B-49, and a proportional annual assessment, through 1997, against auto insurers sufficient to enable the New Jersey Property-Liability Insurance Guaranty Association to make annual loans of $160,000,000 to the New Jersey Automobile Guaranty Fund, an entity created by the FAIR Act to help defray the losses of the New Jersey Automobile Full Insurance Underwriting Association (JUA). N.J.S.A. 17:30A-8; 17:33B-5. The legislation specifically forbids an insurer to impose a premium surcharge to recoup the JUA assessment, N.J.S.A. 17:30A-16, or to pass the surtax along to policyholders. N.J.S.A. 17:33B-51. The Commissioner concedes, however, that insurers are constitutionally entitled to an adequate rate of return, and that insurers may therefore pass along the cost of the assessments and surtax to the extent "constitutionally essential to ensure the insurer's adequate rate of return." Legislative findings introducing the FAIR Act include the statement that "insurers are entitled to earn an adequate rate of return through the ratemaking process." N.J.S.A. 17:33B-2g.
It was not until November 26, 1990, 8 1/2 months after the March 12, 1990, effective date that the Commissioner adopted emergency regulations under the FAIR Act, governing the content of filings seeking approval of premium increases. 22 N.J.R. 3790. By that time, Allstate and Aetna's filings already had been submitted.
Allstate submitted its filing on August 24, 1990. It apparently contained all of the information required by N.J.A.C. 11:3-16.1 et seq., as those regulations then existed. Allstate asked for immediate approval or, failing that, for a hearing pursuant to N.J.S.A. 17:29A-14c.
Not having heard from the Commissioner in response to its filing or the hearing request that accompanied it, Allstate wrote to the Commissioner on September 28, again requesting a hearing. No reply having been received by October 12, Allstate *158 filed a formal application with the Commissioner for emergent relief. On October 29, the Commissioner finally replied, advising Allstate that he was in the process of developing amendments to the regulations which would require separate filings for surtax or assessment relief and govern the content of the filings. Thus, the Commissioner concluded, the August filing could not be considered without additional information, and he returned it to Allstate. Allstate then filed its Chancery Division complaint.
Aetna's situation was not much different. It submitted its filing on June 29, 1990, covering both surtax and assessment relief and premium increases for other reasons. On July 16, the Insurance Department wrote to Aetna, identifying areas of incompleteness in the filing under existing regulations. Aetna responded on August 1, answering some of the Department's inquiries and offering to try to get the answers to others. On September 4, Aetna wrote again, attaching exhibits in response to Department requests. That letter, Aetna contends, completed its filing. The Commissioner did not answer the September 4 letter. On November 5, Aetna wrote again, this time asking for a hearing.
The Commissioner immediately responded, referring for the first time to the developing new regulations that would require, and govern the content of, separate filings seeking surtax and assessment relief. The letter also pointed out a number of shortcomings the Commissioner found in Aetna's filing. The letter ended with the requirement that the non-surtax-and-assessment filing had to be supplemented with further information concerning cost savings resulting from the FAIR Act. On December 17, counsel for Aetna demanded transmittal of the filings to the OAL. On January 14, 1991, Aetna filed its Chancery Division complaint seeking the same relief Allstate sought, namely, a declaration that its filing was approved by operation of law or, if not, that its filing was complete, and *159 should be transmitted to OAL as a contested case.[3]

I.
The Commissioner raises the liminal objection that the Chancery Division had no jurisdiction to entertain the insurers' suits. Instead, he argues, exclusive jurisdiction over State agency action or inaction lies with the Appellate Division. See R. 2:2-3(a)(2); 2:2-4. Equitable Life Mortgage & Realty Investors v. New Jersey Div. of Taxation, 151 N.J. Super. 232, 376 A.2d 966 (App.Div.), certif. denied, 75 N.J. 535, 384 A.2d 514 (1977).
It is unnecessary to entertain such a challenge at this time. If it is valid, the Chancery Division should have transferred the cases here. If it had done so, however, we would not have the record before us which was developed in the Chancery Division. At the worst, the matter is before us now in essentially the same posture as if it had been appealed directly to us. We could, even now, designate the Chancery Division Judge, nunc pro tunc, to hold a factual hearing on our behalf. Cf. State Farm Mutual Auto Ins. Co. v. Public Advocate, 118 N.J. 336, 571 A.2d 957 (1990). It is not in the interest of the public or of any party to further delay a decision on the merits of this matter on account of a possible procedural fault of no consequence.

II.
Both insurers invoke the statutory provision for hearings of contested rate filings. Because the Commissioner sat on the filings longer than permitted by statute, they argue, the filings have been approved by operation of law.
*160 N.J.S.A. 17:29A-14c provides that the Commissioner or, at his discretion, the OAL shall hold a hearing on a rate filing commencing within 30 days of a request of the filer or the Public Advocate. Limits on the time for decision are provided. Finally, the statute says that a filing is deemed to be approved unless rejected or modified by the Commissioner within the time period provided.
Surely, a rate filer cannot start the 30-day clock running on the day of submission of what might well be an incomplete filing. The statute authorizes the Commissioner to adopt regulations to establish standards for the form and content of filings. N.J.S.A. 17:29A-14c(4). In addition, the time schedules contained in N.J.S.A. 17:29A-14c(1) for hearing and deciding rate filings contain their own permissible extension periods. For example, the requirement to hold hearings on consecutive working days can be waived by the Commissioner. The requirement that the Administrative Law Judge submit findings and recommendations within 30 days of the close of the hearing may be extended 30 more days. The Commissioner has a total of 90 days from the close of the hearing to make the final decision.
We recognize that the Commissioner was caught up in the multitudinous administrative adjustments dictated by the enactment of the FAIR Act. His department was plainly not ready to administer the Act when it was adopted, or in the months that followed. It is entirely understandable, however, for Allstate and Aetna to believe that the Department could have sooner adopted regulations for rate filings if it was truly concerned with insurers' rights to earn an adequate return.
We recognize the impact of delay on the insurers. Their surtax and assessment liabilities commenced with the enactment of the FAIR Act, and represented millions of dollars of new costs. If the insurers were entitled to pass those costs along, either dollar-for-dollar as they have argued in a case *161 pending before the Supreme Court,[4] or as a matter of constitutional entitlement to an adequate return, they can do nothing without action by the Commissioner. Approval of a rate filing is prospective only. See Petition of Elizabethtown Water Co., 107 N.J. 440, 452-459, 527 A.2d 354 (1987). Thus, the longer it takes the Commissioner to consider a filing, the greater are the permanently lost revenues, no matter how clearly entitled to them the insurers may ultimately be proven to be.
In our view, the insurers' filings cannot be considered to have been approved by operation of N.J.S.A. 17:29A-14c(1). The insurers read the provision to say that a filing is automatically approved if the Commissioner does not commence a hearing within 30 days of the request of the filer. That is not necessarily so. The actual statutory words are:
A filing shall be deemed to be approved unless rejected or modified by the commissioner within the time period provided herein.
Those words do not make it entirely clear what time period counts. The words follow not only the 30-day time limit for commencing a hearing, but also the statutory authorization for the commissioner to waive a consecutive-hearing-days requirement, to extend the 30-day limit for OAL findings and recommendations, and to extend the time for final decision to 90 days after the close of the OAL hearing. In the case of a complex and contested factual presentation by the filer and possibly by the Public Advocate and others, the OAL hearing alone could take a substantial amount of time.
The point is that the statute does not expressly give automatic approval if a hearing is not commenced within 30 days. Rather, it grants an automatic approval in cases where the commissioner does not approve or disapprove "within the time period provided herein." The statute envisions an approval process that can legitimately consume many months even if its *162 operation is on schedule and wholly responsive to the needs of the filer.
We need not say how the "deemed approved" provision operates in every case, but only in the cases before us. Aetna requested a hearing on November 5, 1990. The Commissioner told Aetna on November 21 that it had to submit bifurcated filings, a requirement which does not seem to us unreasonable. Aetna was in the Chancery Division on January 14, 1991, 54 days later. Allstate made its hearing request with its August 24, 1990 filing, which it submitted in presciently appropriate bifurcated form. The Commissioner failed to commence a hearing in the 81 days that passed before Allstate filed its November 13 Chancery Division complaint. In all of the circumstances, we are unwilling to say that the Commissioner so abandoned the responsibilities of his office as to justify the relief sought by the insurers.
One of those circumstances is the substantial impact that automatic approval would have on policyholders. They would pay the increases sought by the insurers, and we are reluctant to charge them for the slow pace of the Commissioner's responses. Our reluctance results in part from the tendency of insurers to overstate their needs as they enter the adversary atmosphere of rate filing review in the Department of Insurance. Automatic approval of rate filings might therefore resemble an insurer's paying a personal injury claimant the full amount of the first settlement demand.
The New Jersey Supreme Court has had occasion to deal with the consequences of literally applying statutory provisions for automatic approvals arising from regulatory delays. In Manalapan Holding Co. v. Hamilton Tp. Plan. Bd., 92 N.J. 466, 457 A.2d 441 (1983), the Court dealt with the Municipal Land Use Law provision for automatic approval of a preliminary subdivision application not granted or denied within 95 days of a complete submission. Like ours, the statutory deadline was prompted by a desire to avoid the prejudice accruing from a *163 dilatory consideration of the application. Also like ours, the consequences of automatic approval are visited not on the dilatory regulatory agency, but on the public who would have to live with the automatically-approved but unreviewed application. While talking tough, the Supreme Court declined to rule for automatic approval. Instead, it noted that both parties relied on erroneous impressions of the statute's meaning, that there was no bad faith on anyone's part, and that the public's interest was best served, and the applicant's not treated unfairly, by remanding with orders that the application would be deemed approved if not heard by the planning board within 2 weeks. See id. at 480-482, 457 A.2d 441. Precision Indus. Design Co. v. Beckwith, 185 N.J. Super. 9, 447 A.2d 186 (App. Div.), certif. denied, 91 N.J. 545, 453 A.2d 863 (1982), also refused to apply an MLUL "deemed approved" provision where the agency action violated the Open Meetings Law. In such a case, the court said the "remedy of automatic approval [would be] disproportionately weighed against the public interest". Id. 185 N.J. Super. at 19, 447 A.2d 186.
King v. New Jersey Racing Comm'n, 103 N.J. 412, 511 A.2d 615 (1986), treated a similar problem. A licensed harness driver was suspended for improper driving. An Administrative Law Judge's initial decision that there had been no violation was reversed by the Commission. There was no quorum at the Commission meeting, however, and therefore its decision was invalid. The Appellate Division ruled that the ALJ decision became the Commission's final decision. The Supreme Court reversed. It agreed that the Commission vote was faulty, but refused to apply N.J.S.A. 52:14B-10(c), which gives an agency 45 days to adopt, reject or modify an initial ALJ decision, and otherwise deems the ALJ decision to be adopted as the final decision of the agency. For good cause shown, the statute permits the time limits to be extended by the agency. The Supreme Court refused to apply the statute to a situation in which the agency took action in a procedurally imperfect way but without design to delay, gross indifference or inexcusable *164 negligence. It remanded the matter for a prompt decision, and said that the "deemed approved" provision should not be applied where it "would serve only to frustrate the Commission's regulatory responsibility without any compensatory benefit in terms of overcoming any serious agency derelictions." 103 N.J. at 423-424, 511 A.2d 615.
The present case is also one which does not lend itself to application of the automatic approval provision. The provision itself is unclear; the statutory and regulatory context in which the Commissioner found himself was new and complicated, and, although the Department's response to rate filings was not prompt or responsive to the insurers' legitimate needs, it was not such an abandonment of responsibilities as to justify saddling the public with the obligation to pay for the insurers' unreviewed filings.

III.
The Commissioner's arguments on his appeals are that the Chancery Division erred in determining that the insurers' filings should be deemed complete and that they should therefore be transmitted to the Office of Administrative Law for hearing. The argument is focused on two applicable provisions appearing in the Department's regulations as they existed at all relevant times. One of them, N.J.A.C. 11:3-18.6(c), states:
The Department shall advise the filer if the filing is incomplete not later than 25 days after receipt of the filing.
1. The filing shall be deemed to be complete if the filer is not notified that the filing is incomplete.
The other provision, N.J.A.C. 11:3-18.3(d), states:
Provisions of this subchapter that establish time limits may be relaxed or modified by the Commissioner for good cause shown.
The Commissioner did not take any action to relax or modify the 25-day limit for notifying filers that their filings are incomplete. Similarly, the Commissioner did not take any action or make any communication in which he expressed a finding that there was good cause to relax the time limits set in his own regulation.
*165 The insurers argue that an order by the Commissioner to relax the time limit must be entered before the time limit expires. Surely that would be preferable, but it is not jurisdictional. The Commissioner retains his authority after expiration of the 25 days to find good cause for a nunc pro tunc extension.
The positions of the parties in this matter must be evaluated in context. Clearly, the Commissioner was not prepared to fulfill his regulatory function when the insurers submitted their filings. The new statute exacting surtaxes and assessments was in place. The insurers' liabilities for the new exactions began accruing on March 12, 1990. We are not privy to all of the reasons why the Commissioner was not ready to respond for over eight months to rate filings for which the insurers may have been constitutionally entitled to relief. The excuse he offers to this court, namely, the burden of litigating other FAIR Act issues with insurance carriers, is lame indeed.
The Commissioner insists on his right not only to decide what information rate filings should contain and in what form, but also to decide whether a particular filing meets his requirements. He also points out that he has the authority to relax the time limit, which he imposed on himself, for notification of incompleteness. In all these things, the Commissioner is correct. It is the next step which we find impossible to take with him. That is his conclusion that his authority can be vindicated only by leaving his department free to proceed at its own measured pace while insurers accrue surtax and assessment liabilities that they will never be able to recover from policyholders, no matter how meritorious their claims may be.
We make no evaluation of the merit of the insurers' claims. Like Judge Levy, however, we see that there must be an end to the delays in the Department's preparations to deal with its FAIR Act responsibilities. Deeming complete what may well be insufficient is not much better a solution than deeming approved what may well be undeserved. It is surely better, *166 however, than permitting this kind of matter to further drift, if an equitable accommodation can be made to the legitimate concerns of all. We believe such an accommodation is available.
The Chancery Division's order was an appropriate and balanced response to the Department's regulatory unreadiness, the insurers' legitimate concern with their ability to earn an adequate return, and the public's interest in the Department's access to sufficient information from the insurers to do its job. The order not only transmitted the filings to the Office of Administrative Law for hearings, but also provided that any additional information reasonably needed by the Department about the insurers' operations should be sought in discovery under the rules of the OAL. There is no reason to believe that the Department will not be able to gain access to all of the information it legitimately needs through discovery. The loss of Department authority and flexibility is minor, and seems to us to be an equitable price for the pace at which the Department's actions had proceeded, and appeared likely to proceed in the future.
Affirmed.
NOTES
[1] Aetna includes plaintiffs The Standard Fire Insurance Company and the Automobile Insurance Company of Hartford, Connecticut.
[2] Actually, the Commissioner applied for leave to appeal in the Allstate case, and Allstate filed a cross-application for leave to appeal. We granted both of them.
[3] The Commissioner says he discovered in a routine periodic review of all rate filings just before the return day of Aetna's order to show cause that he could send Aetna's filing to OAL with instructions to consider it only on a bifurcated basis. Aetna has agreed to this procedure.
[4] State Farm Mut. Ins. Co. v. Fortunato, No. 32789 (argued January 15, 1991).