630 A.2d 295

IN THE MATTER OF THE COMMISSIONER OF INSURANCE'S
DECISION ON LIBERTY MUTUAL FIRE INSURANCE
COMPANY'S N.J.A.C. 11:3–16 RATE FILING.

Superior Court of New Jersey
Appellate Division

Argued May 19, 1993—Decided July 26, 1993.

Before Judges KING, BRODY and LANDAU.

*Stephen D. Cuyler* argued the cause for appellant Liberty Mutual Fire Insurance Company (*Cuyler, Burk & Matthews,* attorneys; *Mr. Cuyler,* of counsel and on the brief, and *Robert P. Kramer,* on the brief).

*Joseph L. Yannotti,* Assistant Attorney General, argued the cause for respondent Commissioner of Insurance (*Robert J. Del Tufo,* Attorney General, attorney; *Mr. Yannotti,* of counsel and *Bernard M. Flynn,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Appellant, Liberty Mutual Fire Insurance Company (Liberty Mutual) appeals from denial by the New Jersey Commissioner of Insurance (Commissioner) of its *N.J.A.C.* 11:3–16.11 "pass-through" automobile insurance rate filing in which it sought recoupment of 1990 and 1991 payments of surtaxes and assess-

ments imposed by the Fair Automobile Insurance Reform Act (FAIRA). A principal argument made by Liberty Mutual is that the Commissioner's refusal to apply *N.J.A.C.* 11:3–11.16 retroactively constituted an unconstitutional application of FAIRA, by foreclosing it from demonstrating inability to earn an "adequate rate of return" as a result of the payments of the 1990 and 1991 surtaxes and assessments. We agree and conclude that the Commissioner's blanket denial of any pass-through relief must be reversed.

FAIRA imposed surtaxes and assessments upon New Jersey insurers (and others) [1] to satisfy obligations of over three billion dollars accumulated by the Joint Underwriting Association (JUA). A three-year 5% surtax on all taxable premiums for voluntary automobile insurance policies (*N.J.S.A.* 17:33B–49) was enacted, together with a proportional annual assessment against auto insurers and other property and casualty insurers sufficient to enable the New Jersey Property–Liability Insurance Guarantee Association to make annual loans of $160 million to the New Jersey Automobile Guaranty Fund. *N.J.S.A.* 17:30A–8(a)(9) and (10).

Pursuant to this statutory scheme, various Liberty Mutual affiliates paid approximately $21 million in surtaxes and assessments during 1990 and 1991. Approximately $8 million in payments were made prior to the Commissioner's promulgation of emergency regulations in November, 1990 which provided a method for consideration and possible recoupment of the surtaxes and assessments in a rate filing application. *See* 22 *N.J.R.* 3790.

Relying in part on *N.J.S.A.* 17:33B–2(g) and the existence of the emergency regulations now formally codified as *N.J.A.C.* 11:3–16.11, the Supreme Court ruled in May, 1991 that FAIRA did not facially violate the New Jersey or United States Constitutions. *State Farm v. State,* 124 *N.J.* 32, 590 *A.2d* 191 (1991).

---

[1] Annual assessments are also levied against licensed attorneys, physicians, chiropractors, physical therapists, and auto body repair facilities. *N.J.S.A.* 17:33B–5b.

On November 26, 1991, Liberty Mutual made its "prior approval" filing[2] with the Commissioner, seeking an overall passenger auto rate increase of 11.4%. This rate increase request was denied by the Commissioner on December 20, 1991. The decision was not appealed.

On December 30, 1991, Liberty Mutual filed its "pass-through"[3] rate request for approval pursuant to *N.J.A.C.* 11:3–16.11 seeking to revise its private passenger automobile rates to cover $21,347,-380 in 1990 and 1991 surtaxes and assessments imposed pursuant to *N.J.S.A.* 17:30A–8(a) and *N.J.S.A.* 17:33B–49.

On March 5, 1992 the Department of Insurance denied recovery, stating:

(1) We cannot approve the recoupment of past surtaxes and assessments from future policyholders—ratemaking is prospective only.

(2) You have not provided rate indications due to the requested pass through by coverage according to the Department's private passenger auto filing regulations *N.J.A.C.* 11:3–16.

(3) We cannot approve a pass through to private passenger auto policyholders of assessments on other lines of business. It is not clear from your filing if you are attempting to do this.

(4) In his letter to you dated December 20, 1991, Samuel E. Sackey, Actuarial Analyst with our Department denied your request for a prior approval rate increase for private passenger auto. He indicated in his denial letter that his average overall rate indications were –7.7% on a total limits basis and –14.9% on a basic limits basis. It is our determination that Mr. Sackey's indicated redundancy in your current private passenger auto rate will absorb the surtax and assessments which will be payable prospectively allowing your company to make an adequate future rate of return consistent with the Clifford Formula.[4]

---

[2] The "prior approval" filing is the traditional rate filing made under pre-FAIRA regulations, and excludes consideration of surtaxes and assessments. *N.J.A.C.* 11:3–16.10(b)8(vii).

[3] The "pass-through" rate filing is a special separate filing which includes consideration of surtaxes and assessments in order to establish whether an insurer has made an adequate rate of return. *N.J.A.C.* 11:3–16.11.

[4] As to the "Clifford Formula," see, *In re Application of Insurance Rating Bd.*, 63 *N.J.* 413, 417, 307 A.2d 604 (1973); *N.J.A.C.* 11:3–16.10.

Liberty Mutual filed a direct appeal to this Court on April 23, 1992 challenging the denials in paragraphs 1 and 3 of the Commissioner's March 5, 1992 decision letter.

On appeal, Liberty Mutual argues that: (1) the prospective application of N.J.A.C. 11:3–16.11 deprived it from demonstrating inability to realize its legislative and constitutional rights to receive an adequate rate of return after payment of the 1990 and 1991 assessments and surtaxes; (2) the Commissioner must consider the cost of assessments imposed by N.J.S.A. 17:30A–8 upon all of its lines of business, when analyzing whether an insurer is able to earn a fair rate of return in its automobile business; and (3) FAIRA should be read to authorize assessments paid by other lines to be recouped only against automobile rates, where an insurer writes both non-auto and auto business.

The Commissioner contends that we need not address Liberty Mutual's arguments in that the unappealed disapproval of Liberty Mutual's "prior approval" filing precluded recoupment by way of the subsequent "pass-through" filing. He says that Liberty Mutual previously failed to establish any need for rate increases. The Commissioner also argues that the Department's prospective-only interpretation of N.J.A.C. 11:3–16.11 was warranted due to Liberty Mutual's delay in filing the "pass-through" application, and that the legislative scheme of FAIRA precludes passing on to an insurer's auto policy holders the cost of FAIRA assessments imposed on its non-auto lines.

### Background

The Fair Automobile Insurance Reform Act (FAIRA) was enacted effective May 12, 1990 to address the grave problems which arose out of New Jersey's 1988 JUA legislation. Its purpose was to facilitate an orderly phase out of JUA, and to restore private passenger automobile risks to the voluntary market through creation of a temporary Market Transition Facility (MTF).

In *State Farm, supra,* automobile insurers contested the constitutionality of the surtaxes and assessments imposed upon them under Sections 74 and 76 of FAIRA (see *N.J.S.A.* 17:30A–8(a)(9) & (10) and *N.J.S.A.* 17:33B–49), contending that the Act precluded insurers from passing along those obligatory expenses to their policyholders, thereby denying them a reasonable rate of return.

The Supreme Court determined that FAIRA gives the Commissioner power to provide a constitutionally adequate fair rate of return to insurers. Noting that the Commissioner had adopted regulations governing rate relief to offset surtaxes and assessments when such fair return had been denied, (now *N.J.A.C.* 11:3–16.11), the Court held that FAIRA was not facially unconstitutional. *Id.* at 58–61, 590 *A.2d* 191.

Although the Court held that FAIRA did not facially deny any insurer a fair rate of return, its ruling did not preclude an as-applied challenge "in the event that the relief afforded to them under *N.J.A.C.* 11:3–16.11 is either substantively or procedurally inadequate to assure a constitutionally fair adequate rate of return." *Id.* at 63, 590 *A.2d* 191. The legislation specifically precludes insurers from fixing a premium surcharge solely to recoup the JUA assessment or to impose the surtax burden upon policyholders. However, "insurers are constitutionally entitled to an adequate rate of return, and ... may therefore pass along the costs of assessments and surtax to the extent 'constitutionally essential to ensure the insurer's adequate rate of return.'" *Allstate Ins. Co. v. Fortunato,* 248 *N.J.Super.* 153, 157, 590 *A.2d* 690 (App.Div.1991). *See also, State Farm v. State,* 124 *N.J.* 32, 59–60, 590 *A.2d* 191 (1991).

As insurers may not *directly* pass-through to policyholders the assessments and surtaxes imposed by the FAIRA, *N.J.S.A.* 17:30A–16b and 17:33B–51, assessments and surtaxes are excluded by regulation from the expense base used in the standard prior approval rate filing. *See N.J.A.C.* 11:3–16.10(b)8(vii). If an insurer is unable to earn a constitutionally adequate rate of return,

however, it may seek to offset those surtaxes and assessments by making a "pass-through" filing under *N.J.A.C.* 11:3–16.11.

The filing requirements set forth in *N.J.A.C.* 11:3–16.11 are to enable the Commissioner to determine whether a rate change is necessary to provide the insurer with the opportunity to earn a constitutionally adequate rate of return. The data filed enables the Commissioner to evaluate the insurer's experience on all lines of business in New Jersey, the insurer's operational efficiency, the insurer's method of allocation of expenses, and the synergistic effect of mandated private passenger automobile insurance on the profitability of other lines of business. *N.J.A.C.* 11:3–16.11(d). *See also,* "Rate Filing Requirements: Voluntary Market Private Passenger Automobile Insurance," Department of Insurance Summary of Comments and Agency Responses, 23 *N.J.R.* 519, respecting adoption of this regulation.

## I.

We first consider the Commissioner's argument that the denial of Liberty Mutual's pass-through application must be affirmed because there was no appeal from his previous determination that no rate increases were warranted under the prior approval application on December 20, 1991. For this reason alone, it is argued, the Commissioner was obligated to disapprove Liberty Mutual's later pass-through rate filing. We disagree.

As noted above, FAIRA surtaxes and assessments are excluded by statute and regulation from consideration in the normal prior approval filing. *N.J.A.C.* 11:3–16.10(b)8(vii); *N.J.S.A.* 17:30A–16 and 17:33B–51. In consequence, the Commissioner's denial of Liberty Mutual's prior approval filing for rate increases, rendered without consideration of the effect of surtaxes and assessments paid by Liberty Mutual, cannot be deemed to have a preclusive effect on the subsequent "pass-through" filing, whether the initial denial was appealed or not. To the extent the determination to disapprove the pass-through application because of information contained in the prior approval filing was based upon refusal to

consider the effect of surtax and assessments which predated the regulation, see II. below.

## II.

In support of that part of its argument which addresses the effect of previously incurred surtax and assessments upon the pass-through application, Liberty Mutual emphasizes that emergency regulations (now *N.J.A.C.* 11:3–16.11) establishing a procedure for consideration of surtax and assessments were not even in place until November 26, 1990, and that FAIRA required appellant to pay millions in assessments and surtaxes prior to adoption of the regulations. This points up the argument that refusal to consider those statutory payments made prior to November 26, 1990, deprived Liberty Mutual of a reasonable opportunity to raise the issue of a fair rate of return for 1990.

The Commissioner agrees with Liberty Mutual that, as interpreted in *State Farm, supra,* FAIRA provides authority to consider past payments to satisfy the constitutional standard that an automobile insurer must not be precluded from earning an adequate rate of return. However, the Commissioner contends that Liberty Mutual's laches requires prospective application in this case because it delayed filing its pass through application until December, 1991, more than one year after the emergency filing procedures were set in place during November, 1990.

We find no merit in the State's contention that limitation to prospective application was warranted in this case by reason of Liberty Mutual's asserted delay in filing its pass-through application. Although both parties chose to analyze the timeliness of the filing under the doctrine of laches, our reading of the regulation and Department of Insurance responses during the pre-adoption of such, reveals that Liberty Mutual substantially complied, within reasonable time limits, in filing its *N.J.A.C.* 11:3–16.11 application.

Published Comments and Responses to the then proposed regulation reveal concerns by the regulated community that the regu-

lations provided insufficient time to gather the data for an *N.J.A.C.* 11:3–16.11 filing. The following excerpts are illustrative:

COMMENT: Several commenters stated that filing requirements contained in *N.J.A.C.* 11:3–16.11 regarding rate filings reflecting surtaxes and/or assessments is burdensome, unnecessary, irrelevant, arbitrary and capricious ...

RESPONSE: The Department disagrees. The Department believes that the information requested is appropriate, relevant and necessary to evaluate an insurer's rate filing which reflects surtaxes and/or assessments ... *The Department notes that some filers may not be a position to provide all of the required information or have not collected data in such a manner so as to facilitate its reporting. This situation has been addressed in N.J.A.C. 11:3–16.3(a), which provides that filers must begin collecting data in a manner to facilitate its reporting by January 1, 1991 to be included in filings made on or after April 1, 1992 and N.J.A.C. 11:3–16.11(c), which provides for the waiver of any filing requirement contained in N.J.A.C. 11:3–16.11 in the Commissioner's discretion* ... [emphasis provided].

\* \* \* \* \* \* \* \*

COMMENT: One commenter stated that it allocates hours of data processing time charged by line of business rather than line of business by state, as required by *N.J.A.C.* 11:3–16.11(b)8iv. Production of the data in the required format would be costly and time consuming. The commenter further believes that this requirement serves only to dissuade companies from making rate filings to reflect surtaxes and assessments, since rates have not been made using data processing expenses charged in this manner.

RESPONSE: The Department disagrees. As was stated in a response to a previous comment, the Department believes that this information is necessary and appropriate to its review of rate filings reflecting surtaxes and/or assessments. If a filer is not currently collecting data in a manner to facilitate reporting, it must begin doing so by January 1, 1991 and include the information on filings made on or after April 1, 1992 pursuant to *N.J.A.C.* 11:3–16.3(a).

["Rate Filing Requirements: Voluntary Market Private Passenger Automobile Insurance," Department of Insurance Summary of Comments and Agency Responses, 23 *N.J.R.* 516, 518.]

\* \* \* \* \* \* \* \*

## *N.J.A.C.* 11:3–16.3 provides:

11:3–16.3 General requirements and filing format

(a) The data requirements set forth in this subchapter are minimum requirements. The filer may submit any other data it believes to be relevant in justifying proposed rate changes. If the filer has not collected portions of this information in the past, or has not collected it in a form so as to facilitate reporting, it is not required to compile it retrospectively. *All filers shall begin collecting this information in a manner so as to facilitate reporting no later than January 1, 1991 and report data so collected on filings made or required to be made on or after*

*April 1, 1992.* If a filer has collected this information, it *may be* included on filings made or required to be made prior to April 1, 1992. [emphasis provided].

Under *N.J.A.C.* 11:3–16.3(a), filers must begin collecting data by January 1, 1991 so as to facilitate reporting to be included in filings made on or after April 1, 1992. There is no indication in the regulation that filers are required to make an *N.J.A.C.* 11:3–16.11 filing prior to April 1, 1992. If a filer has collected the required information, it *may* include it on filings prior to April 1, 1992. Indeed, the explanations offered during the rule-making proceedings by the Department expressly suggest that these dates apply to *N.J.A.C.* 11:3–16.11 filings. Thus, we find that Liberty Mutual's application was not so untimely as to compel rejection on this ground.

To the extent the Commissioner's denial of Liberty Mutual's application expresses a blanket finding that the Department may not engage in ratemaking which allows an insurer to recoup any previously paid surtaxes and assessments, that conclusion is in error.

Ratemaking is a legislative function, not a judicial function and generally, "by its nature legislative action operates prospectively and not retroactively." *Petition of Elizabethtown Water Co.,* 107 *N.J.* 440, 452, 527 *A.*2d 354 (1987). The legislature may, however, authorize retroactive ratemaking in certain circumstances. *Id.* at 451, 527 *A.*2d 354.

A statute can be construed to apply retroactively "where the intent of the legislature cannot otherwise be satisfied." *Rothman v. Rothman,* 65 *N.J.* 219, 224, 320 *A.*2d 496 (1974). In *State Farm v. State, supra,* 124 *N.J.* at 58, 590 *A.*2d 191, our Supreme Court found that

the addition of Section 2g to the original bill demonstrates the Legislature's awareness and accommodation of the constitutional requirement that insurers must receive a fair rate of return. It is reasonable to conclude that the Legislature conferred on the Commissioner of Insurance the necessary implied authority to satisfy the constitutional standard that it expressly acknowledged in the statute.

The Supreme Court found that the regulations adopted by the Department of Insurance (now *N.J.A.C.* 11:3–16.11) governing availability of pass-through rate relief to offset the surtax and assessment payments corroborates the Legislative intention that a fair rate of return must be assured. *Id.* This constitutional conclusion cannot be read to mean that technisms may be employed to bar recovery when such payments have deprived an insurer of a fair return.

Liberty Mutual paid under protest over $8 million in 1990 surtaxes and assessments, *prior* to the adoption of the emergency regulations, which became *N.J.A.C.* 11:3–16.11 in November of 1990. These regulations were adopted so that insurers would be able to earn an adequate rate of return even after those payments. We agree with Liberty Mutual that the Commissioner was constitutionally and legislatively required to apply *N.J.A.C.* 11:3–16.11 to surtax and assessment payments made by insurers both before *and* after·its adoption in November, 1990. When it upheld the constitutionality of FAIRA in *State Farm,* the Supreme Court considered the effects of all 1990 surtaxes and assessments on insurers' ability to earn adequate rates of return. *State Farm,* 124 *N.J.* at 62–63, 590 *A.2d* 191.

We also note that under *N.J.A.C. 11:3–16.11(f)* the Commissioner has provided the following:

> In the event the Commissioner determines that rate relief is deemed to be necessary, the Commissioner shall determine whether the rates should be adjusted *immediately or over time,* as may be appropriate.
>
> [*N.J.A.C.* 11:3–16.11(f) (emphasis supplied) ]

Thus, the Commissioner himself has recognized that it may be appropriate to level off the effect of earlier surtaxes and assessments, in rates applicable to persons who are insured in years other than those in which the surtaxes and assessments have been levied, in order to afford a constitutionally adequate fair rate of return.

For the foregoing reasons we reverse and remand to the Commissioner with instructions that he reopen Liberty Mutual's *N.J.A.C.* 11:3–16.11 rate submission to allow consideration of the

1990 and 1991 assessments and surtaxes to the extent necessary to provide Liberty Mutual with an adequate rate of return for those years.

## III.

Liberty Mutual has also argued that we should reverse that portion of the Commissioner's March 5, 1992 decision which denied rate relief on the basis that it could not "approve a pass through to private passenger auto-policy-holders of assessments on other lines of business."

In its December 30, 1991 *N.J.A.C.* 11:3–16.11 application, Liberty Mutual sought to recoup through its automobile rates, assessments occasioned by the JUA deficit which were imposed upon both its auto and non-auto lines of business.

Liberty Mutual says that these should be considered in establishing its fair return auto insurance rates, since only the automobile insurance group were fairly linked to the JUA deficit.

The contrary argument suggests that FAIRA does not require auto insurance policyholders to pay for assessments imposed on an insurer's non-auto lines of business, and that, if anything, the legislative scheme evidences an intent to reduce JUA deficit costs not only by imposition upon auto and non-auto insurers, but also among various classes of non-insurers perceived to benefit economically from automobile insurance. *See N.J.S.A.* 17:33B–5b.

A reading of *N.J.A.C.* 11:3–16.11 does not reveal whether the Commissioner has absolutely precluded consideration of assessments on an insurer's non-auto lines. The filing requirements do not appear specifically to require that a company set them forth.

The plain thrust of Liberty Mutual's argument is that it should be able to recoup assessments paid by its auto *and* non-auto lines solely through its automobile passenger rates.

It is apparent from reading paragraph 3 of the March 5, 1991 letter that the Department of Insurance was unsure whether Liberty Mutual was seeking to pass through in its automobile

rates, the assessments imposed on its other lines of business. As a result, the Commissioner made no findings and gave no reasons in this regard.

■ We raised at oral argument the question whether Liberty Mutual's position on this issue would give it an undue advantage in rates it was able to charge on its non-auto lines, as compared to similarly assessed insurers which issue no automobile insurance policies in New Jersey. Where, as here, the record is devoid of any factual determinations and reasons, particularly in an area demanding administrative expertise, we will not attempt to speculate as to the rationale behind the administrative decision. *Riverside General v. N.J. Hospital Rate Setting Com'n.*, 98 *N.J.* 458, 469–70, 487 *A.*2d 714 (1985).

We therefore find it necessary to remand for the Commissioner to set forth the reasons why the approval was denied for pass through of assessments imposed on Liberty Mutual's non-auto lines of business.

## Conclusion

The letter decision under review is reversed. We remand to the Commissioner of Insurance for further proceedings consistent with this opinion.